### DUPUIS v. CENTRAL AND SOUTHERN FLORIDA FLOOD CONTROL DISTRICT.
### No. 204625.

Circuit Court, Dade County.

January 20, 1958.

Ives & Kirk, Miami, for plaintiff.

Sturrup & Gautier, Miami, for defendant.

ROBERT H. ANDERSON, Circuit Judge.

On August 19, 1957 the plaintiff filed his bill against Central and Southern Florida Flood Control District to enjoin trespass, clouding title, and for other relief. He alleged that he was the record title holder of certain described property in Dade County, which he says he acquired by deed dated September 9, 1931, and that he then went into possession, fenced, used and farmed such lands and paid the taxes thereon and maintained an adequate system of drainage to serve his lands in common with those similarly situated. He further alleged that the Central and Southern Florida Flood Control District, on April 17, 1957, addressed a letter to him, informing him that the district was claiming a 130-foot right of way across the entire section which would take in excess of twelve acres and was not located with definiteness nor was the legal description available to him. This notice informed the plaintiff that the district intended to make immediate use of the land and directed him to remove forthwith any structures belonging to him that might lie within the undefined right of way. He prayed for a temporary injunction and on final hearing a permanent one, restraining the district from entering upon, trespassing, or otherwise seizing control of any portion of his lands. A copy of the district's letter was attached to the complaint.

A motion to dismiss the bill was denied and the defendant given fifteen days to answer.

The defendant, by its answer, admitted certain allegations of the complaint, including the sending of the notice, but denied others. For an affirmative defense, it said that the letter "was written pursuant to the availability to the Central and Southern Florida Flood Control District by the Trustees of the Internal Improvement Fund of certain reservations for canal rights of way as a part of the over-all plan of improvement of the Central and Southern Florida Flood Control District for southeastern Florida, and that the reservations so available are set forth in deed no. 16284 under date of May 28, 1910, as stated in said letter. Defendant affirmatively alleges that on the basis of said reservations and the assignment of same by the Trustees of the Internal Improvement Fund, any improvement in or upon the lands of the plaintiff will be permissible as a part of the defendant's over-all program for flood control, reclamation, drainage and kindred purposes."

The plaintiff moved for a decree on bill and answer, but the court, on hearing the motion, was of the opinion that the matter would be more properly presented on a motion for summary final decree. However, on November 20, 1957, it granted the plaintiff a temporary injunction from any entry upon or trespass upon the plaintiff's lands and from taking, cutting, severing or otherwise removing soil, etc., and from hauling away any of the materials that constitute lands of the plaintiff subject to this suit, and from clouding plaintiff's title.

On November 25, 1957 the plaintiff filed a motion for summary decree, which came on to be heard on December 24, 1957. In the meantime, the District Court of Appeal of the Third District, on December 2, 1957, handed down its decision in Albury v. Central and Southern Florida Flood Control District, et al, 99 So. 2d 248, upon which the defendant relies.

It is admittedly difficult to distinguish the decision in the Albury case from the case at bar, except to say that this case appears to be a stronger one than the Albury case. The District Court of Appeal in the Albury case rejected the appellant's contention that the appellees were estopped from setting up the reservations in the Bolles deed of May 28, 1910, which the flood control district claimed had been assigned to it.

The plaintiff, to counter this contention, relies upon Trustees of Internal Improvement Fund v. Bass (1953), 67 So. 2d 433, where the Supreme Court of Florida, in a suit in ejectment by the Trustees of the Internal Improvement Fund, affirmed an order of the circuit court of Highlands County granting defendant's motion to dismiss the complaint. In that case it appeared that the lands were granted under the Swamp Land Grant Act of 1850 and the owner had acquired them in 1941 from a purchaser at a tax sale, fenced them, improved them, and paid taxes thereafter. In its opinion the Supreme Court said—

> "In its inception the tax assessment was not authorized by law and had it been moved against promptly might have been set aside, but the present owner has been in possession more than eleven years under a deed issued by the State. Under such a state of facts, even if his title is not good by adverse possession, the State is estopped to question it. Daniell v. Sherrill, Fla., 48 So. 2d 736, 23 A.L.R. 2d 1410."

As above pointed out, this court was so impressed with the high-handed character of the district's action that it granted a temporary injunction prior to the decision of the District Court of Appeal in the Albury case. In addition to the fact that the court

felt that the district was estopped—limitations do not run against the state—it also felt that the attempted assignment of the reservations made by the Trustees of the Internal Improvement Fund in the Bolles deed was ineffectual because the conveyance recited—

"Saving and Reserving unto the said, the Trustees of the Internal Improvement Fund of the State of Florida, *and their successors*, the right at any time to enter upon the said lands and make or cause to be made and constructed thereon such canals . . . as may in the judgment of the said Trustees, or their successors, be necessary and needful for the drainage or reclamation of any of the lands granted the State of Florida, by Act of Congress, approved September 28th, 1850 . . ."

It will be noted that the instrument made reservations for the Trustees of the Internal Improvement Fund "and their successors," which in the opinion of this court can only mean their "successors in office" (section 253.02, Florida Statutes), who are the *successor Trustees of the Internal Improvement Fund.* It will be noted further that the reservation in the Bolles deed runs to the Trustees of the Internal Improvement Fund "and their successors" *but not to their assigns.* A reservation in a deed is strictly construed against the grantor. Deeds, 26 C.J.S. 1010, section 140 (2). And an instrument that is not made assignable expressly by its terms will not have assignability breathed into it. This was the opinion of Attorney General Landis on October 3, 1931, and as far as we are advised it has never been overruled.

It is inconceivable that reservations in a deed made in 1910 and never attempted to be enforced, directly or indirectly, would be given any effect in 1957 against an owner who had acquired the property in 1931, gone into possession, fenced it, farmed it, paid taxes on it, and exercised all the rights of an owner for twenty-six years.

Suppose this plaintiff had built a fine house or a fifteen-story office building on the property that the district has told him to get off of. Would he have to remove these structures as directed by the district? Property rights are entitled to some protection against a ruthless sovereign. As above pointed out, the district's action was one of the most highhanded that it has ever been this court's misfortune to observe. In the language of Mr. Justice Swayne of the Supreme Court of the United States in Farrington v. Tennessee (1878), 95 U. S. 679, 24 L. Ed. 558 —

"A compact lies at the foundation of all national life. Contracts mark the progress of communities in civilization and prosperity. They guard, as far as is possible, against the fluc-

tuations of human affairs. They seek to give stability to the present and certainty to the future. *They gauge the confidence of man in the truthfulness and integrity of his fellow-man. They are the springs of business, trade and commerce. Without them, society could not go on. Spotless faith in their fulfillment honors alike communities and individuals. Where this is wanting in the body politic, the process of descent has begun, and a lower plane will be speedily reached.* To the extent to which the defect exists among individuals, there is decay and degeneracy. As are the integral parts, so is the aggregated mass. Under a monarchy or aristocracy, order may be upheld and rights enforced by the strong arm of power. *But a republican government can have no foundation other than the virtue of its citizens. When that is largely impaired, all is in peril.* It is needless to lift the veil and contemplate the future of such people. Trist v. Child, 21 Wall., 441, 22 L. ed., 623; 1 Montesquieu's Spirit of Laws, 25. *History but repeats itself. The trite old aphorism, that 'Honesty is the best policy,' is true alike of individuals and communities. It is vital to their highest welfare."* (Italics added.)

It is therefore ordered, adjudged and decreed—

That the plaintiff's motion for a summary final decree is granted.

That the temporary injunction heretofore issued herein is hereby made permanent.

That the deed from the Trustees of the Internal Improvement Fund of the State of Florida to the Central and Southern Florida Flood Control District dated after and filed after this court issued its temporary injunction the 20th day of November, 1957, is hereby expunged from the public records, and the clerk of this court is ordered to so note, and the same is hereby removed as a cloud on the title of the plaintiff's land.

That the plaintiff's attorneys are awarded an attorneys' fee in the sum of $15,000, this sum being established by the affidavit filed on behalf of the defendant and supported by the affidavit of the plaintiff.